ALFRED ELA, Appellant, *vs.* LUCIA ELA, Guardian.

Sagadahoc.    Opinion March 31, 1892.

*Probate.    Guardian and Ward.    Account.*

Probate procedure, in this State, should be conducted upon the rules of the broadest equity, whenever the statute does not conflict with that view.

A release from a ward to his guardian, made after the ward's majority, may be interposed as a defense in the probate court, either in answer to a citation to settle his account as guardian, or as a voucher upon the settlement of the same.

The release in this case was given by a ward four years after his majority, to his mother, who had been his guardian. No fraud is shown, and the ward, a man of liberal education and of several years' experience in active business, then twenty-five years of age and fully understanding his rights, made a full settlement with his mother as his guardian, receiving from her property of considerable value which he still holds. For seven years he did not question the fairness or validity of the settlement. *It was held*, that he must be content therewith, and be absolutely bound thereby.

ON REPORT.

This was an appeal from the decree of the probate court, for Sagadahoc county, allowing the account of Lucia Ela, guardian of her son Alfred, the appellant. The account presented and allowed is as follows :

"The first and final account of Lucia Ela, guardian of Margaret K. Ela, Walter Ela, Richard Ela and Alfred Ela minors of——in the county of Sagadahoc. Said accountant charges herself as follows, viz :

"By amount of personal estate, as by inventory      $54,397.25

By sums received as by Schedule A, on file herewith, on account of adjustments made with the wards, books and papers have not been preserved and it is impossible for guardian to make any

statement of receipts or income and of changes in ————————
investments,     -   ·   -     -     -     $54, 397.25

"Said accountant asks allowance as follows, viz:
To sums paid as by Schedule B, on file herewith.
The wards having made full settlement and exe-
cuted releases to the guardian, namely :   Richard
Ela, Margaret K. Ela and Walter Ela, dated
March 7, 1873, and Alfred Ela November 27,
1882, the guardian claims full credit for the
entire amount of the estate without further
accounting,     -     -     -     $54,397.25

                                        $54,397.25

Amount charged,     -     $54,397.25
Amount allowed,     -     $54,397.25

Balance due,     $ 0000.00"

The appellant filed to the account the following objections :
(1st,) because the said statement is not such a just and true
account as the court has a right to require and ought to require
in compliance with the conditions of the guardian's bond ; (2d,)
because the allegations that books and papers have not been
preserved furnishes no lawful excuse for a failure to render a
full and proper account; (3rd,) because the account is not
made up in detail and in items ; (4th,) because this court has
no jurisdiction to excuse the guardian from making an account.

And answering to the allegations contained in said statement :
(1st,) he denies that any adjustment was ever made with him
by said guardian ; (2d,) he says that the books and papers
relating to the dealings of said guardian with the funds belong-
ing to him, so far as there were any such, have been preserved ;
(3rd,) he says that the said guardian is as well able to make an
account of her doings as such as she was when he arrived at his
majority or at any time since ; (4th,) he says that it is the
fault of the said guardian that she is unable to make an account
of her doings as such, and cannot make any statement of

changes in investments and receipts of income; (5th,) he denies that he has ever made any settlement with the said guardian; (6th,) he says that the release made by him dated November 27, 1882, is of no effect, having been made in ignorance of his rights, under extraneous influence, without explanation and without counsel.

A decree, *in extenso*, was thereupon made by the judge of probate, after a full hearing, the material parts of which are as follows:

"After fully hearing the evidence and arguments in this case, I find that Mrs Lucia Ela was appointed guardian of her minor children, Walter, Richard, Margaret and Alfred, April 4, 1864, and that she returned an inventory, showing $54,397.25 of personal estate, belonging to said minors, at the May term, 1864. At the April term of probate court, 1875, she petitioned for license to transfer bonds, which was granted. Nothing further appears to have been done in this court, until November term, 1889, when petition was presented by Alfred Ela, for an order of court, to cite the guardian into court, to settle an account, and an order was granted, ordering said guardian to render her account of guardianship on or before the first Tuesday of February, 1890, and on that day the foregoing account was rendered into court. Said Alfred at said term objected to said account, and gave his reasons, which are stated in writing. The matter was continued from term to term in order to procure evidence on the one side and the other, and to accommodate the parties.

"From the evidence I find that Walter, Margaret and Richard Ela, gave a release to their guardian, November 7, 1873, paper marked "B," and Alfred Ela did likewise, November 27, 1882. This manner of effecting a settlement by a guardian with his wards is not the proper and legal method of settling estates in probate, in general; still each case must depend on its merits. No charge of fraud has been made, and no evidence given tending to show fraud. All the parties in interest but Alfred desire that their settlement and release with their guardian shall stand as made. Alfred, who is evidently a man of much more intellectual ability than the average man, has freely entered into

this settlement and release with his eyes open. It appears to me from the evidence that he had a chance to know whether the settlement was fair and just, and the guardian filed her account as ordered, claiming that it is the best she can do, and states her reasons therein. It appears to me that Alfred had a full knowledge of the estate, and what had become of it, and how it had been managed, and should not, at this late day, eight years after giving the release, now that his guardian, his mother, is in failing health, object to her settling this account, and using his said release as a voucher, until he has made restitution to her of the property which he has received from her, which, from the evidence in the case, was not definitely stated, but which, I am led to believe, must have been quite an amount in value. He was of tender age when his mother assumed said trust. Through all the years of his minority, she cared for and educated him, and paid his bills. No doubt hundreds and thousands of dollars have been so expended by her, and mother-like, she kept no account, and, on his arriving at full age, she took his release, as she had previously done from her other children, and for seven years thereafter, the matter slumbered. I, therefore, approve this account; the vouchers B and C are satisfactory vouchers, and, in my opinion, they operate as an estoppel as between these wards and the guardian and I do allow the same, and order it recorded."

*Williams and Wood*, for appellant.

1. The paper filed is not an account. An account is defined to be "a detailed statement of the mutual demands in the nature of debt and credit between parties arising out of contracts or some fiduciary relation." Bouvier's Law Dict. 85, Account. Also it is said, "an account is no more than a list or catalogue of items whether of debts or credits." *Factory* v. *Reid*, 5 Cow. 593. It is not a "just and true" account to state a general sum and say that it has been paid. This has been decided where a statute for enforcing a mechanic's lien required the filing of a "just and true" account and it was held that the setting out a balance due was not stating such an account. *Mc Williams* v. *Allan*, 45 Mo. 573. In a case in which the definition from Bouvier is adopted,

this very apt remark is found in the opinion : "There is a broad distinction between an account and the mere balance of an account resembling the distinction in logic between the premises of an argument and the conclusions drawn therefrom." *Mc Williams* v. *Allan*, 45 Mo. *supra*. This view is sustained by the equity rule, that "a single matter cannot be the subject of an account. There must be a series of transactions on one side, and of payments on the other." *Porter* v. *Spencer*, 2 Johns. Ch. 171 ; *Blakeley* v. *Briscoe*, 1 Hempst. 115. A general statement that the proceeds of the property in the hands of the guardian is about equal to the expenses incurred in its management is not a report or account answering to that required of a guardian. *Whitney* v. *Whitney*, 15 Miss. 740.

2. Every guardian shall settle his account with the judge, &c ; and neglect or refusal to do so is a breach of his bond ; R. S., c. 67, § 22 ; *Wing* v. *Rowe*, 69 Maine, 282, 284. A settlement out of court is not a compliance with the conditions of the bond. *Stark* v. *Gamble*, 43 N. H. 465, 466. Instances wherein a settlement out of court between parties standing in a fiduciary relation to one another has been held no bar to an accounting are *Wing* v. *Rowe*, 69 Maine, 282 ; *Wade* v. *Lobdell*, 4 Cush. 510, cited in 69 Maine, 284 ; *Bard* v. *Wood*, 3 Met. 74 ; *Harris* v. *Ely*, 25 N. Y. 138 ; *Rieben* v. *Hicks*, 4 Brad. (N. Y.) 136 ; *Fraenzuick* v. *Miller*, 1 Dem. (N. Y.) 136 ; *Reilly* v. *Duffy*, 4 Dem. (N. Y.) 366 ; *Say* v. *Barnes*, 4 S. & R. 112 ; *Kenny* v. *Jackson*, 1 Haggard (Ecc.) 105 ; *Morgan* v. *Lewes*, 4 Dow. 29, 35 ; *Affrey* v. *Affrey*, 10 Beav. 353 ; *Purcell* v. *Cole*, L. & T. 449, 455 ; *Barton* v. *Fuson*, 47 No. West. Rep. (Ia.) 774 ; *Gregory* v. *Orr*, 61 Miss. 307 ; *Harris* v. *Carstarphen*, 69 N. C. 416 ; *Voltz* v. *Voltz*, 75 Ala. 555 ; *Briers* v. *Hackney*, 6 Ga. 419 ; *Wellborn* v. *Rogers*, 24 Ga. 558 ; *Clay* v. *Clay*, 3 Met. (Ky.) 552.

3. Vouchers should accompany a guardian's account. Thus it is said "There is no proof or vouchers to sustain these items. They were therefore properly refused as credits by the court on the trial." *Newman* v. *Reed*, 50 Ala. 300 ; *Poullain* v. *Poullain*, 76 Ga. 420, 445.

4. The fact that the guardian has never rendered any regular accounts and her admission that she has kept no accounts avoid her plea of a release from Alfred Ela. *Briers* v. *Hackney*, 6 Ga. 419. It is the imperative duty of an accounting party, such as an agent, trustee, receiver, executor, or guardian, to keep his accounts in a regular manner, and to be always ready with them. *Poullain* v. *Poullain*, *supra*; *Hardwick* v. *Vernon*, 14 Ves. 510; *Chicago Mut. Life Ind. Ass.* v. *Hunt*, 127 Ills. 286; *Re Gaston trust*, 35 N. J. Eq. 60, 64; *Stocker* v. *Hutter*, 134 Pa. St. 19; *Rieben* v. *Hicks*, 4 Brad. 137.

The validity of a release depends upon the fairness of the settlement or transaction upon which it is founded. It can therefore be no bar to a discovery or an accounting, for upon that discovery or accounting will depend the validity of the release itself. *Roche* v. *Morgell*, 2 Sch. & Lef. *726. In a transaction between persons standing in confidential relations to one another, the burden of showing that the transaction was open, fair, voluntary, and well understood, is on the person who stood in the position of protector. *Wade* v. *Pulsifer*, 54 Vt. 45; *Fish* v. *Miller*, 1 Hoff. Ch. (N. Y.) 267; *Adair* v. *Brimner*, 74 N. Y. 539, 554; *Traphagen* v. *Voorhees*, 44 N. J. Eq. 21, 32; *McConkey* v. *Cockey*, 69 Md. 286, 289; *Waller* v. *Armistead*, 2 Leigh, 11, 15 (21 Am. D. 594). Instances: (guardian and ward,) *Carter* v. *Tice*, 120, Ill. 277; *Gillett* v. *Wiley*, 126, Ill. 310; *Line* v. *Lawder*, 122 Ind. 548; *Wade* v. *Pulsifer*, 54 Vt. 45; *Williams* v. *Powell*, 1 Ired. Eq. 460; *Waller* v. *Armistead*, 2 Leigh, 11 (21 Am. Dec. 594); *Wellborn* v. *Rogers*, 24 Ga. 558; *Womac* v. *Austin*, 1 S. C. 428; *Voltz* v. *Voltz*, 75 Ala. 555; (brother and brother,) *Gordon* v. *Gordon*, 3 Swanston. 400; (brother and sister,) *Jones* v. *Jones*, 120 N. Y. 589, 599; (parent and child,) *Berkmeyer* v. *Kellerman*, 32 O. St. 239 (30 Am. Rep. 577); (trustee and *cestui que trust*,) *Waldrop* v. *Leaman*, 30 S. C. 428; (executor and legatee or heir,) *Chapman* v. *Allen*, 56 Conn. 152; *Wheeler* v. *Smith*, 9 How. (U. S.) 55; (agent and principal,) *Moxon* v. *Payne*, 43 L. J. (N. S.) Ch. 240; *Brooks* v. *First Church*, 128 Pa. St. 408; *Tompkins* v. *Hollister*, 60 Mich.

470. Laches: *Hemmich* v. *High*, 2 Watts, 159; *Butler* v. *Hyland*, 26 Pac. Rep. 1108; *Cocking* v. *Pratt*, 1 Ves. 400, 401; *Turner* v. *Collins*, L. R. 7 Ch. 229, 339-342; *Murray* v. *Palmer*, 2 Sch. & Lef. *486, 487; *Seavey* v. *King*, 5 H. L. Cas. 627, 666; *Kempton* v. *Ashbee*, L. R. 10 Ch. 15; *Hatch* v. *Hatch*, 9 Ves. *292; (great lapse of time,) *Charter* v. *Trevelyan*, 11 Clark & F. 714, 740; *Archbold* v. *Scully*, 9 H. L. Cas. 360, 383; *DeBussche* v. *Alt*, 8 Ch. Div. 286, 314.

*W. L. Putnam*, for guardian.

HASKELL, J. One question is, whether a guardian may interpose the release of his ward, given after he is of age, as a defense in the probate court, to a citation for the settlement of his account.

Probate procedure, in this State, should be conducted upon the rules of the broadest equity, whenever the provisions of statute do not conflict with that view. Substantial justice should be awarded by methods conducive to economy and dispatch, and without unnecessary circuity of action or prolixity in procedure.

Probate appeals give opportunity for the settlement of issues of fact by a jury, as in actions at law, as well as afford complete consideration of the cause under the beneficent rules of chancery procedure, elastic enough to meet the varied conditions likely to arise in such matters; so that, from inability to properly deal with the defense here set up, there is no necessity of requiring it to await an action at law on the bond, and compel prolix and perhaps vexatious litigation over the settlement of probate accounts, that in the end may amount to naught. It is much better, in the first instance, to determine the guardian's liability to account, than, after a long struggle at accounting, to hold it need not have been done at all.

Failure to account when required by statute or by the judge of probate is a breach of a guardian's bond. *Pierce* v. *Irish*, 31 Maine, 254. When such account is offered for settlement or the guardian has been cited to account, the whole matter is within the jurisdiction of the probate court, and must there be dealt with. It is of no consequence whether the rights of the

parties are determined upon an issue raised on answer to the citation, as in *Wade* v. *Lobdell*, 4 Cush. 510, or upon a statement of account filed in pursuance of a decree thereon, requiring an account. In either case, the whole matter is open for the consideration of the judge of probate ; for, if the issue be raised upon the citation, and a settlement with the ward be interposed or his release pleaded, it is pertinent that the court consider the actual condition of the estate as bearing upon the fairness of the settlement or the validity of the release. All such settlements should be subjected to the closest scrutiny, to make sure that the ward has not been overreached or defrauded ; so in *Wade* v. *Lobdell*, *supra*, the receipt in full settlement having been allowed as a bar to the citation without requiring the guardian to testify as to its consideration, on appeal, the case was remanded to the probate court with directions to hear evidence touching the validity of the receipt and to require the guardian to testify respecting his "account and the items thereof." The same doctrine is approved in *Wing* v. *Rowe*, 69 Maine, 284.

Lucia Ela, in 1864, was appointed guardian of her four minor children, Margaret, now dead, Walter, Richard, and Alfred the appellant. In 1873, the three oldest children, then of age, settled with their guardian. To Richard was intrusted the family estate, including that belonging to Alfred, the appellant. It was invested in manufacturing business in Cambridge, Massachusetts. The business did not prove remunerative, and came to the hands of a trustee, who transferred it to Alfred in 1879, the next year after he became of age. He managed it until 1882, when, tired of it, he transferred it to his brother Walter, together with his supposed claim against Richard for losing his property, and released his mother from all liability to him as guardian, and received from her the deed of her house in Washington, D. C., of considerable value, which property he still holds under a conformity deed, received by him in 1890, while these proceedings were in progress. The appellant's release is under seal ; when he made it, he was twenty-five years of age, and aware of the financial straits of his family. He had been educated at Harvard, and had studied abroad. Three years'

active business must have given him some experience in the realities of life. He has neither inexperience nor ignorance to offer in excuse. He must have well understood the effect and purpose of the release set up in defense. No fraud appears, and for seven years he slept on his rights.

A careful consideration of the whole evidence leads to the irresistible conclusion that the appellant should be held to abide the stipulations of his own deed, solemnly and understandingly made, without fraud or deceit.

*Decree of probate court affirmed, but without costs.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.